IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BROADBASED EQUITIES, INC.,
on behalf of itself and all others
similarly situated,

        Plaintiff,                      Case No. 8:09-cv-2473-T-26TBM

v.

KEITH OLSEN, WILLIAM LUBY,
KATHLEEN EARLEY, GEORGE
KELLY, ARTHUR MATIN, G. MICHAEL
SIEVERT, MICHAEL SILECK, M.
ALEX WHITE, SWITCH & DATA
FACILITIES COMPANY, INC., and
EQUINIX, INC.

        Defendants.
_____/

## DEFENDANT EQUINIX, INC.'S MOTION TO DISMISS THE COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Equinix, Inc. respectfully requests that the Court enter an order dismissing the Complaint (Dkt. 1). To avoid duplication, Equinix incorporates by reference the arguments made in the motion to dismiss filed by Switch & Data Facilities Company Inc. and the Individual Defendants (Dkt. 26) and submits this motion to address certain issues specific to the allegations against it.[1]

---

[1] Further to the discussions at the hearing in this matter yesterday, Equinix and the other defendants are presently preparing a motion to stay this action, and expect to file such a motion promptly.

I.   **INTRODUCTION**

This is a case in which a single shareholder of Switch & Data challenges a proposed merger in which Equinix will acquire all of the outstanding common shares of Switch & Data for cash and Equinix stock. This transaction was the product of months of negotiations and due diligence. The merger consideration – nearly $700 million – represents a 33.9% premium over the price of Switch & Data's stock on the date the agreement was inked.

Notwithstanding the fact that Switch & Data shareholders are getting a very good deal, Plaintiff here asserts – as plaintiffs do in virtually all acquisition challenges – that the directors of the seller (here, Switch & Data) have failed to adhere to their fiduciary obligations of loyalty, care, and candor to their shareholders. Almost as an afterthought, however, the Complaint in this case also makes the bald and unsupported assertion that the buyer (here, Equinix), which conducted a lengthy, hard-fought, arm's-length negotiation, somehow aided and abetted the Switch & Data directors' alleged breaches of duty.

To successfully plead an aiding and abetting claim, it is not enough for Plaintiff merely to say that Equinix is a party to a merger that supposedly entailed a breach of duty by Switch & Data's board. Under the substantive law and Supreme Court precedent interpreting Rule 8(a), Plaintiff is legally required to allege facts – not conclusions, but <u>facts</u> – showing that Equinix knowingly participated in the alleged misconduct by Switch & Data's directors. <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1964 (2007).

The Complaint here is devoid of any such facts. The very most the Complaint's factual allegations allow is that Equinix negotiated at arm's-length for the best deal it could get. Such negotiations are perfectly normal and perfectly legal. Because the Complaint fails

2

to allege facts sufficient to demonstrate illegality, Plaintiff's aiding and abetting claim against Equinix is facially implausible and must be dismissed. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009) (holding that, to survive a motion to dismiss, a complaint must contain facts which state a claim to relief that is plausible on its face).

## II.     ALLEGATIONS OF THE COMPLAINT

Switch & Data is a public company with its principal executive offices in Tampa. (Dkt. 1, ¶ 4.) It provides Internet technologies to customers that use the Internet to do business with their own customers. (Id.) Equinix is a public company located in California that is engaged in a similar line of business. (Id. ¶ 14.) On October 21, 2009, Switch & Data announced that it had reached a deal to sell all of its stock to Equinix for cash and stock consideration valued at approximately $689 million or $19.06 per share. (Id. ¶ 37.) The merger consideration represents a 33.9% premium over Switch & Data's closing price on the date the agreement was reached.[2]

Plaintiff is an owner of Switch & Data common stock, although the Complaint says nothing about how substantial (if at all) its alleged interest is. (Id. ¶ 4.) In its Complaint, Plaintiff seeks an injunction to prevent Switch & Data's shareholders from voting on the merger, or, failing that, an award of money damages. (Id., Wherefore clause.) The gravamen of the Complaint is that Switch & Data's directors failed to adhere to their fiduciary obligations under Delaware law in agreeing to the merger. (See id. ¶¶ 35-39, 45-54.)

---

[2]     See Proxy Statement at 38, Ex. A to Switch & Data's and the Individual Defendants' Motion to Dismiss. (Dkt. 26.)

The Complaint contains four claims: (1) a claim for alleged violation of Section 14(a) of the Securities Exchange Act of 1934, and SEC Rule 14a-9 promulgated thereunder, asserting misleading statements and omissions in the Proxy Statement soliciting shareholder approval for the merger (Count I), (2) a claim for alleged breaches of fiduciary duties of care, good faith, and loyalty under Delaware law challenging the fairness of the merger terms (Count II), (3) a claim for alleged breaches of the fiduciary duty of candor under Delaware law, again based on disclosure in the Proxy Statement (Count III), and (4) a claim for aiding and abetting the alleged breaches of fiduciary duty care, good faith, and loyalty under Delaware law (Count IV).

Count IV for aiding and abetting is the only claim denominated as being brought "Against Equinix." That count challenges only the fairness of the merger agreement and its terms. (See Dkt. 1, ¶ 56.) Plaintiff does not allege that Equinix aided and abetted any alleged disclosure defects in the Proxy Statement.

The Complaint contains numerous conclusory assertions about the alleged conduct of Switch & Data's directors in connection with the merger. In sum, the complaint asserts that Switch & Data's directors allegedly breached their duties by negotiating an "unfairly low" transaction price, failing "to conduct any market check," and agreeing to various "deal protection devices" in the merger agreement with Equinix. (Id. ¶¶ 36, 38, 46-49.)

With respect to Equinix's involvement, however, the Complaint is totally bare. All of Plaintiff's allegations regarding Equinix's supposed aiding and abetting the directors' alleged breaches of duty appear in two paragraphs of the Complaint: Paragraphs 56 and 57. One of those paragraphs asserts only that "the proposed sale … could not take place without the

knowing participation of Equinix," an unremarkable and obvious proposition that is neither relevant nor helpful to Plaintiff. (Id. ¶ 57.) The other points to the alleged "deal protection devices" in the merger agreement (id. ¶ 38) and asserts without elaboration that by agreeing to them, Equinix "aided and abetted the [directors] in the breaches of fiduciary duties" (id. ¶ 56). Tellingly, however, plaintiffs do not allege (for they cannot) that any of these "deal protection devices" were in any way atypical, let alone unlawful or inherently wrong.

These bare conclusions of "knowing participation" and "aiding and abetting" are unsupported by any allegations of facts related to Equinix's supposed conduct. Indeed, so far as the Complaint is concerned, all Equinix did was negotiate and agree to a merger agreement. The Complaint asserts that Equinix (1) began negotiations with Switch & Data in April 2009 (id. ¶ 35), (2) had "discussions" with Equinix for some period thereafter (id. ¶ 36), and (3) executed a definitive agreement in October 2009 (id. ¶ 37). Plaintiff's unadorned allegations that Equinix negotiated and concluded an acquisition deal with Switch & Data – something that businesses do every day – supports no inference that Equinix acted illegally and gives rise to no plausible cause of action.

### III.  ARGUMENT

To survive a motion to dismiss, a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." Twombly, 127 S.Ct. at 1973. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. Determining whether this test is met requires first that the Court identify and disregard conclusory allegations "that are not entitled to the presumption of truth." Id. at

5

1951; see also Twombly, 127 S.Ct. at 1964 (proper pleading "requires more than labels and conclusions"). Once a plaintiff's conclusions are excluded, the Court must assess whether any "well-pleaded facts give rise to a plausible inference" of illegality. Iqbal, 127 S.Ct. at 1952. The Complaint here fails this test.

> **A.  Plaintiff Has Failed To Plead Facts Giving Rise To A Plausible Inference Of Illegal Aiding And Abetting.**

To state a claim for aiding and abetting a breach of fiduciary duty under Delaware law, a plaintiff is required to allege: (1) the existence of a fiduciary relationship between two persons or entities, (2) a breach of the fiduciary's duty, (3) knowing participation in that breach by the defendant, and (4) damages. See, e.g., In re Lukens Inc. S'holders Litig., 757 A.2d 720, 734 (Del. Ch. Dec. 1, 1999).[3] Plaintiff's allegations are insufficient to give rise to a plausible inference that the second and third elements of this claim are present.

As an initial matter, Plaintiff has failed to plead sufficient facts to support a claim for breach of the Switch & Data directors' duties, as discussed in Switch & Data's Motion to Dismiss. (Dkt. 26 at 14-21.) As a matter of law, then, Plaintiff's claim against Equinix for aiding and abetting – which is based upon its supposed culpable participation in the director's alleged fiduciary breaches – necessarily fails for want of a primary breach by the directors. See, e.g., Vichi v. Koninklijke Philips Elecs. N.V., 2009 Del. Ch. LEXIS 209, at *71 (Del. Ch. Dec. 1, 2009).

---

[3]  Plaintiff asserts that its aiding and abetting claim against Equinix is governed by Delaware law, presumably because Switch & Data is incorporated in Delaware. (Dkt. 1, Fourth Claim). Solely for purposes of this motion, Equinix accepts Plaintiff's assertion that Delaware law applies.

6

Moreover, Plaintiff has also failed to establish that Equinix "knowingly participated" in any alleged breach of duty. The element of "knowing participation" is not dissimilar to the requirements of civil conspiracy and is "focus[ed] on the understanding of the parties with respect to their complicity … in any breach of fiduciary duties." Carlton Invest's. v. TLC Beatrice Int'l. Hold's., Inc., 1995 WL 694397, at *15 n.11 (Del. Ch. Nov. 21, 2005) (finding knowing participation where defendants facilitated and received improper benefits constituting corporate waste). Thus, "knowing participation in a board's fiduciary breach requires that the third party act with the knowledge that the conduct [it] advocated or assisted constitutes such a breach." Malpiede v. Townson, 780 A.2d 1075, 1097 (Del. 2001).

One would not ordinarily expect to find the kind of concerted action the "knowing participation" element requires where parties sit on opposite sides of a negotiating table. Recognizing this elementary logic, the Delaware Chancery Court has held that a party's "active[] participati[on] in the negotiation and structuring" of a transaction "does not imply knowing participation in a breach of fiduciary duty". In re Gen. Motors S'holder Litig., 2005 WL 1089021, at *27 (Del. Ch. May 4, 2005), aff'd, 897 A.2d 162 (Del. 2006); see also In re Shoe-Town, Inc. Stockholders Litig., 1990 WL 13475, *8 (Del. Ch. Feb. 12, 1990) (dismissing aiding and abetting claim against buyer because allegations that buyer made offers, engaged in negotiations, and conducted due diligence do not permit a court to "reasonably infer knowing participation").

This makes perfect sense. Equinix is obliged to its own shareholders to obtain the best deal available to them, and has no duty to ensure that Switch & Data achieved the best possible terms that it could. See McGowan v. Ferro, 2002 WL 77712, at *4 (Del. Ch. Jan. 11,

2002). Thus, notwithstanding Plaintiff's disagreement with the merger terms, it cannot legitimately hold Equinix responsible for aiding and abetting based on allegations that are consistent with nothing more than standard, arm's-length dealings. See In re Telecom., Inc., 2003 WL 21543427, at *9 (Del. Ch. July 7, 2003); McGowan, 2002 WL 77712, at *4 ("[Buyer] was entitled to bargain to obtain the best price for itself, and breached no duty by doing so, even if the result was a price that was unfairly low from the standpoint of [seller's] stockholders.").

Yet, to the extent the threadbare factual allegations of the Complaint establish anything, they establish nothing more than ordinary commercial dealing. As concerns Equinix's participation, the only allegations of facts the Complaint makes are that Equinix, over a period of months, negotiated and agreed with Switch & Data to acquire all of Switch & Data's common stock. (Dkt. 1, ¶¶ 35-37). Because these facts establish neither knowledge of nor participation in any alleged fiduciary breach, they are plainly insufficient to state an aiding and abetting claim. See, e.g., Lukens, 757 A.2d at 734-35 (dismissing aiding and abetting claim against acquiror because complaint was devoid of factual allegations which would give rise to an inference of knowing participation in misconduct by the acquiror); Greenfield v. Tele-Communications, Inc., 1989 WL 48738, at *2 (Del. Ch. May 10, 1989) (dismissing aiding and abetting claim where "nothing [was] alleged that would show the merger negotiations to be other than arm's-length").

When the Complaint is evaluated under the standards of Twombly and Iqbal, the conclusion that it fails to state an aiding and abetting claim against Equinix becomes even more clear. Plaintiff's assertion in Paragraph 57 of the Complaint that "the proposed sale …

could not take place without the knowing participation of Equinix" (Dkt. 1, ¶ 57) is a bare (and obvious) conclusion that is insufficient to meet the requirement of "knowing participation" in wrongdoing. See Twombly, 127 S.Ct. at 1966 ("[A] conclusory allegation of agreement at some unspecified point does not supply facts adequate to show illegality."). Obviously, Equinix knowingly participated in the proposed sale – there is no way it could be a party to the merger without doing so – but that is not the question. The question is whether Equinix knowingly participated in a breach of fiduciary duty committed by someone else, and this factually barren allegation provides no answer.

      Similarly, none of Plaintiff's conclusory allegations in Paragraph 56 of the Complaint give rise to any inference that Equinix knowingly participated in an alleged breach of duty. Plaintiff's empty assertion that Equinix "aided and abetted" the directors' alleged breaches (Id. ¶ 56) is obviously entitled to no credence under Twombly and Iqbal. So Plaintiff attempts to buttress this blank averment by complaining about alleged "deal protection" mechanisms in the merger agreement – namely, a no solicitation clause, a termination fee provision, a voting agreement, and matching rights provisions. (Id. ¶ 56; see also id. ¶ 38.) These provisions are not even unusual in corporate acquisitions, let alone illegal *per se*, and cannot by themselves support an inference of "knowing participation." See, e.g., Rand v. W. Airlines, 1989 Del. Ch. LEXIS 118, at *14 (Del. Ch. Sept. 11, 1989). And critically, plaintiff alleges no facts to show that these provisions were inherently wrongful or suggestive of knowing participation in a fiduciary breach.

      In fact, termination fees, matching rights provisions, voting agreements, and no solicitation clauses are all commonplace in acquisition transactions, and are generally

permitted under Delaware law.  See, e.g., In re Toys "R" Us, Inc., S'holder Litig., 877 A.2d 975, 1017 (Del. Ch. 2005) ("[N]either a termination fee nor a matching right is per se invalid"); In re IXC Commc'ns, Inc. S'holders Litig., 1999 Del Ch. LEXIS 210, at *17 (Del. Ch. Oct. 27, 1999) (holding that no solicitation provisions "are common in merger agreements and do not imply some automatic breach of fiduciary duty"); id. at *22 (holding that voting agreements are "are not illegal *per se*" and are void only when the agreement "defrauds or disenfranchises other shareholders").  That the agreement here contains such provisions may establish that Equinix negotiated hard for favorable terms, but it provides no basis to infer that Equinix aided and abetted a breach of fiduciary duty.  (See supra at 6-7.)

Furthermore, Plaintiff here has alleged no facts to establish that the complained-of provisions exceed the bounds of Delaware law.  It baldly asserts that the termination fee is "high" (Dkt. 1, ¶ 56), but this is a bare conclusion that is entitled to no deference.  And, in any event, the 3.9 % termination fee in this case is well within the range of fees upheld by the Delaware Chancery Court as reasonable.  See, e.g., Toys "R" Us, 877 A.2d at 1016-17 (upholding 3.75% termination fee).

Moreover, even if one of the provisions of the merger agreement ultimately were to be invalidated, the central legal question raised by this motion with respect to Count IV of the Complaint is whether Plaintiff has pleaded facts indicating that Equinix knew that the Individual Defendants were improperly agreeing to accept an unlawful provision.  Plaintiff has done no such thing.  The fact that a buyer "requested and obtained [certain] concessions does not, without more, give rise to an inference that [the acquiror] was aware of any wrongful conduct."  Rand, 1989 Del. Ch. LEXIS 118, at *14.

It remains only to note that Plaintiff's conclusory assertions that Equinix was poised to acquire Switch & Data "on the cheap" (Dkt. 1, ¶ 39) and that the sale process was inadequate (id. at ¶ 56) fail to provide any specific factual allegations in support of this bare legal conclusion, much less to impute any improper knowledge or participation to Equinix. Lukens, 757 A.2d at 727, 735 (holding that, in the absence of the assertion of any "particularized facts", Plaintiff's claim that the offer was "grossly underpriced" did not support an inference of knowing participation). As the Delaware Chancery Court has recognized, "it should be obvious that 'an offeror may attempt to obtain the lowest possible price for stock through arms'–length negotiations." Id. at 735.

Plaintiff makes no claim here that the negotiations between Equinix and Switch & Data were not at arm's-length, nor is there any allegation that the transaction benefitted the Individual Defendants at the stockholders' expense. Rand at *14; see also Lukens, 757 A.2d at 735. For instance, nothing in the Complaint suggests that Equinix was privy to the Switch & Data directors' deliberations. See Malpiede, 780 A.2d at 1098 (affirming dismissal where there was "no indication in the amended complaint that the [acquirer] participated in the board's decisions, conspired with the board, or otherwise caused the board to make the decisions at issue"); L A Partners, L.P. v. Allegis Corp., 1987 Del. Ch. LEXIS 501, at *22 (Del. Ch. Oct. 22, 1987). None of the facts alleged in the Complaint could plausibly give rise to an inference of Equinix's knowing participation in any alleged misconduct.

In sum, Plaintiff's aiding and abetting claim is based on nothing more than Equinix's negotiation of and agreement to a transaction Plaintiff supposedly does not like. Such allegations do not permit any inference, much less a plausible one, that Equinix knowingly

participated in any alleged breach of duty.  See Twombly, 127 S.Ct. at 1966 (explaining that "lawful parallel conduct fails to bespeak unlawful agreement").  Plaintiff's aiding and abetting claim against Equinix must be dismissed.

> **B.    If Plaintiff Intended To Assert a Section 14 Claim Against Equinix, Plaintiff Has Failed To Do So.**

Unlike Count IV of the Complaint – which indicates that it is directed "Against Equinix" – Count I for misleading statements and omissions in the Proxy Statement under Section 14(a) appears to be directed to Switch & Data and to the Individual Defendants.  This is consistent with the fact that Plaintiff does not allege that Equinix aided and abetted the director's purported breaches of a Delaware law duty of candor with respect to the Proxy.[4]

Nonetheless, Count I contains numerous vague references to "Defendants" without ever specifying which Defendant supposedly engaged in what conduct, and it is therefore unclear whether Plaintiff intended to claim that Equinix violated the Exchange Act.  If Plaintiff did intended to do so, its pleading falls well short of the mark.

Initially, Plaintiff's allegations of defective disclosure in the Proxy fail to comply with the heightened pleading requirements of the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b), and fail to allege any material misstatement or omission in the Proxy.  These issues are discussed in full in the Motion to Dismiss by Switch & Data and the Individual Defendants (Dkt. 26 at 7-14), which we incorporate by reference here.

---

[4]     It is also consistent with the fact that each of the alleged material proxy omissions identified in the Complaint concerns the "Background" section of the Proxy Statement, which describes the process that Switch & Data – not Equinix – followed before executing the merger agreement.

Significantly, Plaintiff's Section 14(a) allegations also fail to comply with general notice pleading standards, because they fail to "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Instead of presenting well-pleaded factual allegations, Plaintiff literally recites the text of Rule 14-a9(a), word for word. (Compare Dkt. 1 ¶ 42 with 17 C.F.R. § 240.14a-9(a).) This "formulaic recitation" of the elements of a Section 14 claim is not entitled to any assumption of truth, and fails to satisfy even general notice pleading standards. Iqbal, 129 S. Ct. at 1949-50; accord Sinaltrainal v. Coco-Cola Co., 578 F.3d 1252, 1266 (11th Cir. 2009) (holding that Plaintiff's "formulaic recitation" of elements was insufficient to state a claim for relief).

Moreover, in its Complaint, Plaintiff has made no effort to attribute specific conduct to particular defendants, instead just generically asserting that "the Defendants" supposedly did various things. Under Federal Rule of Civil Procedure 8, this is improper:

> Although [*Rule 8*] does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, it requires, at a minimum, that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests…. [b]y lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct [the plaintiff's] complaint failed to satisfy this minimum standard.

Pierson v. Orlando Regional Healthcare Sys., Inc., 619 F. Supp. 2d 1260, 1273 (M.D. Fl. 2009); accord Lane v. Capital Acquisitions and Mgmt. Co., 2006 U.S. Dist. LEXIS 96422, at *15 (S.D. Fl. April 14, 2006) (dismissing complaint for plaintiff's failure to differentiate among defendants). Plaintiff's allegations fail to give Equinix adequate (indeed any) notice

of what it supposedly did wrong. As such, to the extent that Count I is directed against Equinix, it should be dismissed as well.[5]

## IV. CONCLUSION

For the foregoing reasons, Defendant Equinix respectfully requests that the Court dismiss the Complaint.

Dated: January 13, 2010                           CARLTON FIELDS, P.A.


By:  /s/ Samuel J. Salario, Jr.
     Samuel J. Salario, Jr. (FBN: 083460)
     Kevin P. McCoy (FBN: 036225)
     4221 W. Boy Scout Boulevard
     Tampa, FL 33607
     Telephone: 813-223-7000
     Facsimile: 813-229-4133
     E-mail: ssalario@carltonfields.com

     *Counsel for Defendant Equinix, Inc.*

Of Counsel:
Neal A. Potischman
Samantha H. Knox
DAVIS POLK & WARDWELL LLP
1600 El Camino Real
Menlo Park, California 94025
Telephone: (650) 752-2000
Facsimile: (650) 752-2111

---

[5] Plaintiff's Section 14(a) claim is the sole federal claim alleged in the Complaint. The alleged basis for subject matter jurisdiction over the state law claims is supplemental jurisdiction under 28 U.S.C. § 1367. (Dkt. 1, ¶ 2). If the Court dismisses the Section 14(a) claim, therefore, it should also decline to exercise supplemental jurisdiction over the pendent state law claims and dismiss them. See 28 U.S.C. § 1367(c)(3); Mergens v. Dreyfoos, 166 F.3d 1114, (11th Cir. 1999) ("if the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of state claims") (quoting L.A. Draper & Sons v. Wheelabrator-Frye, Inc., 735 F.2d 414, 428 (11th Cir. 1984)); Nash v. Lee Memorial Health System, 2005 WL 2043642, at * 8 (M.D. Fla. Aug. 25, 2008).

14

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 13, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to the following attorneys: Samuel J. Salario, Jr., Kevin P. McCoy, Kenneth J. Vianale, Julia Prag Vianale, Richard Brualdi, Michael Chapman, and Louise McAlpin. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants: None.

                                                s/Samuel J. Salario, Jr.
                                                Samuel J. Salario, Jr.